J-A09034-25

2025 PA Super 176

| | | |
|---|---|---|
| IN RE: THE ESTATE OF VINCENT J. MORANTE, SR. DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: VINCENT J. MORANTE, JR. | : : : : : : : | No. 853 WDA 2024 |

Appeal from the Order Entered June 20, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 02-22-06227

BEFORE:  KUNSELMAN, J., NICHOLS, J., and LANE, J.

OPINION BY LANE, J.:                    **FILED:  August 14, 2025**

Vincent J. Morante, Jr. ("Vincent"), appeals from the order: (1) sustaining in part the preliminary objections by Jenine Valenti ("Jenine"), Vito Valenti ("Vito"), and Neissa Morris ("Neissa") (collectively, "Appellees"); and (2) dismissing his petition for rule to show cause why the wills of Vincent J. Morante, Sr. ("Decedent") should not be set aside.  We reverse and remand for further proceedings.

Decedent had three children: Vincent, Jenine, and Trina Rice ("Trina").  Appellees Vito and Neissa are Jenine's children.  On June 14, 2018, Decedent executed a will (the "2018 Will"), which bequeathed: (1) a parcel of land and Decedent's farming equipment to Vito; (2) two parcels to Neissa; (3) a cash amount to equalize the bequests to Vito and Neissa; and (4) the remainder of the estate to Jenine.  The 2018 Will specifically disinherited Vincent and Trina.

On March 5, 2019, Decedent executed another will (the "2019 Will"), which expressly revoked the 2018 Will. After certain personal property bequests, the 2019 Will bequeathed the remainder of Decedent's estate as follows: (1) a 20% share to Vito; (2) a 20% share to Neissa; and (3) a 60% share to Jenine. The 2019 Will named Jenine as executrix and specifically disinherited Vincent, Trina, and Trina's three children.

Decedent died on September 11, 2022, without a surviving spouse. On September 23, 2022, the Register of Wills issued a decree granting letters testamentary to Jenine and admitting the 2019 Will to probate.

On November 22, 2022, Vincent, Trina, and Trina's children filed a petition for the issuance of a citation to Jenine and a rule to show cause why the 2019 Will should not be set aside based upon Jenine's undue influence on Decedent and Decedent's lack of testamentary capacity. The Orphans' Court issued a citation directed to "Respondent." Order, 11/30/22. Jenine, as executrix of Decedent's estate, filed preliminary objections to the petition, asserting, *inter alia*, that the petitioners lacked standing because they were not beneficiaries under the 2018 Will.

Vincent filed an amended petition for rule to show cause on February 1, 2023, seeking to invalidate both the 2018 Will and 2019 Will (collectively, the "Wills"). Trina and her children were not parties to the amended petition. As relevant here, Vincent alleged that, at the time Decedent executed the Wills: (1) he was elderly and "exhibited signs of dementia and mental incompetence;" (2) he was "wholly dependent on Jenine;" and (3) Jenine

"exploit[ed] Decedent [by making] false claims about [Vincent] in an effort to convince . . . Decedent that [Vincent] should be disinherited." First Amended Petition for Rule to Show Cause, 2/1/23, at ¶¶10-12.

Jenine filed an answer and new matter to the amended petition. Although Jenine's answer and new matter was endorsed with a notice to plead, Vincent did not file a responsive pleading.

On October 16, 2023, Jenine filed a motion to dismiss, arguing that the Orphans' Court lacked subject matter jurisdiction over the amended petition because Vincent did not file a notice of appeal from the probate decree within one year, which she contended is the sole method to contest a will under Section 908 of the Probate, Estates and Fiduciaries Code (the "PEF Code").[1] *See* 20 Pa.C.S.A. § 908(a). Although not named as respondents in Vincent's petition, Vito and Neissa filed a separate motion to dismiss, in which they also challenged Vincent's failure to file a notice of appeal from the probate decree. They additionally contended that the court lacked jurisdiction because Vincent did not make them parties to his will contest within the one-year statutory period, notwithstanding the fact that they are beneficiaries under the 2019 Will. The court denied the motions to dismiss and directed Vincent to file a petition for the issuance of an amended citation to Vito and Neissa.

On November 9, 2023, Vincent filed the petition for amended citation, and the Orphans' Court issued a citation to Vito and Neissa. Vito and Neissa

---

[1] *See* 20 Pa.C.S.A. §§ 101-8816.

- 3 -

then filed the preliminary objections at issue in this appeal, and Jenine filed a joinder to the objections. Appellees raised five objections, arguing that: (1) the Orphans' Court lacked subject matter jurisdiction based on Vincent's failure to file a notice of appeal or join them as parties within one year of the probate decree; (2) Vincent lacked standing because the 2018 Will, which also disinherited him, would come into effect if the court set aside the 2019 Will; (3) Vincent could not challenge multiple wills in the same proceeding; (4) the amended petition failed to allege sufficient facts showing a confidential relationship between Jenine and Decedent; and (5) Vincent could not show Jenine received a substantial benefit under the 2019 Will because she would have inherited a greater amount under the 2018 Will.

On June 20, 2024, following briefing and oral argument, the Orphans' Court issued an opinion and order overruling the jurisdictional objection and sustaining the remaining preliminary objections. As a result, the court dismissed Vincent's amended petition. Vincent filed a motion for reconsideration, which the court denied. Vincent filed a timely notice of appeal. Both he and the Orphans' Court have complied with Pa.R.A.P. 1925.

Vincent presents the following issues for our review:

1. Did the Orphans' Court err in ruling that [Vincent] lacks standing to contest the validity of . . . Decedent's purported . . . 2019 Will?

2. Did the Orphans' Court err in ruling that the . . . amended petition for rule to show cause is legally insufficient for contesting multiple wills in the same petition?

3. Did the Orphans' Court err in ruling that [Vincent's] claim of undue influence is legally insufficient for failing to aver sufficient facts to establish the existence of a confidential relationship between . . . Decedent and Jenine . . . ?

4. Did the Orphans' Court err in dismissing [Vincent's] claim of undue influence with prejudice without affording [Vincent] leave to file a second amended petition to cure the supposed pleading defect?

5. Did the Orphans' Court err in determining that [Vincent's] claim of undue influence is legally insufficient for failing to aver facts to establish that Jenine . . . received a substantial benefit by virtue of . . . Decedent's purported . . . 2019 Will?

Vincent's Brief at 4-5 (unnecessary capitalization omitted).

In his first issue, Vincent challenges the Orphans' Court's ruling that he lacked standing to bring this will contest. We review Vincent's arguments mindful of the following standard:

In determining whether the [O]rphans' [C]ourt properly [sustained] preliminary objections . . ., we review the ruling for an error of law or abuse of discretion. On an appeal from an order sustaining preliminary objections, we accept as true all well-pleaded material facts set forth in the appellant's complaint and all reasonable inferences which may be drawn from those facts. Preliminary objections seeking the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief; if any doubt exists, it should be resolved in favor of overruling the objections.

Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary.

*In re Nadzam*, 203 A.3d 215, 220 (Pa. Super. 2019) (citation omitted).

"As a general rule, a party must have standing to contest probate of a decedent's will." *In re Estate of Luongo*, 823 A.2d 942, 953 (Pa. Super. 2003). Section 908 of the PEF Code defines a party's right to appeal from the

- 5 -

probate of a will: "Any party in interest seeking to challenge the probate of a will or who is otherwise aggrieved by a decree of the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court within one year of the decree[.]" 20 Pa.C.S.A. § 908(a). Because Section 908 establishes the cause of action and designates who may sue, standing constitutes a jurisdictional prerequisite to a will contest. **See Estate of Luongo**, 823 A.2d at 953-54.

We have explained:

> A contestant to the validity of a will does not have standing to do so unless he can prove he would be entitled to participate in the decedent's estate if the will before the court is ruled invalid. To be aggrieved by the probate of a will, the contestant's share of the estate must be smaller because of probate or larger if probate is denied.

**Id**. at 954 (citations omitted). "[A] will contestant's standing to appeal from a decree of probate turns delicately on the specific facts and circumstances of the matter at hand." **Id**. at 955.

In **Estate of Luongo**, we addressed whether a will contestant had standing under similar facts to those presented here. The appellant in **Estate of Luongo** contested the probated 1995 will of the decedent, his father, arguing, *inter alia*, that the will was a product of undue influence and forgery. The 1995 will included a specific bequest of $10,000 to the appellant but left the residuary portion of the estate to the decedent's current partner. The 1995 will expressly revoked two prior wills executed by the decedent in 1983 and 1987, each of which bequeathed the entirety of his estate to the partner.

- 6 -

The appellant claimed standing because "his challenge to the 1995 will should be construed as against all earlier wills [as he would] take a larger share of the estate as an intestate heir if **all** the wills are declared invalid." **Estate of Luongo**, 823 A.2d at 953 (emphasis in original).[2]

We recognized that to the extent the appellant was successful in proving an "intrinsic or inherent defect[]" in the decedent's 1995 will, then the "1987 will [would be] revived." **Id**. at 958. Such a result was "consistent with . . . the doctrine of relative revocation[, which] revives an earlier will which has been impliedly revoked by a subsequent will which is later declared invalid." **Id**. at 954 (citation omitted). However, for the appellant to ultimately demonstrate a pecuniary interest in the estate, he would also have to demonstrate the invalidity of both the 1987 and 1983 wills to allow him to receive an intestate share of the decedent's estate. **See id**. at 956; **see also** 20 Pa.C.S.A. §§ 2101(a), 2103(1) (setting forth the right of a decedent's issue to share in the decedent's intestate estate). Therefore, we recognized that the appellant's burden in demonstrating that "his pecuniary interest in the estate [was] aggrieved by the probate of the will at issue [was] complicated by the existence of [the d]ecedent's prior wills." **Estate of Luongo**, 823 A.2d at 956.

_____

[2] While not relevant here, we separately found in **Estate of Luongo** that the appellant had standing to challenge the residuary clause of the 1995 will, because if rendered invalid, a portion of the residuary bequest would pass to him through intestate succession.

- 7 -

Ultimately, this Court in **Estate of Luongo** affirmed the Orphans' Court's determination that the appellant lacked standing. We observed that, even if the appellant were successful in invalidating the 1995 and 1987 wills, he "effectively conceded during oral argument" that the 1983 will was not the product of undue influence. *Id*. at 958. The appellant instead only claimed that the 1983 will "had been physically destroyed." *Id*. When the Orphans' Court "confronted [the a]ppellant with the fact that the 1983 will was still extant," the appellant's only substantive response was to attempt to revoke his undue influence concession. *Id*.

In so ruling, we recognized that the Orphans' Court appropriately reviewed the appellant's claims related to the validity of the prior wills in assessing his standing to bring a challenge to the 1995 will:

> When reviewing [the d]ecedent's testamentary pattern under the prior wills of 1987 and 1983, the court was not passing on the validity of those wills. The court was simply trying to ascertain the realistic possibility of [the a]ppellant's success in challenging the prior wills, which would have to be invalidated before [the a]ppellant could reach more of [the d]ecedent's estate through intestate succession. We conclude that this exercise was entirely legitimate, where done for the purpose of determining whether [the a]ppellant had a practical possibility of an aggrieved interest in the estate by virtue of the probate of [the d]ecedent's 1995 will. We are in agreement with the Orphans' [C]ourt [that t]he practical possibility that [the a]ppellant could reach more of [the d]ecedent's estate through a challenge to the whole of [the d]ecedent's 1995 will is virtually nil on the facts averred, due to the existence of the prior wills.

*Id*. at 958.

In the instant matter, the Orphans' Court relied on *Estate of Luongo* in sustaining the standing objection, reasoning that Vincent could only show an interest in the proceedings if he "prove[d] that he[] would be entitled to a share of [D]ecedent's estate if the [2019] Will before the Court [was] ruled to be invalid." Opinion and Order, 6/20/24, at 2 (*citing Estate of Luongo*, 823 A.2d at 954). The court determined that, because Vincent was "not a beneficiary under the 2019 or 2018 Will[, he] therefore . . . does not have standing." *Id*.

On appeal, Vincent argues that this ruling rested on "an incorrect interpretation of" *Estate of Luongo*. Vincent's Brief at 15. He asserts that unlike the appellant in that case, he has not conceded the validity of the prior will and instead "has averred facts which, if proven, would invalidate both" Wills. *Id*. at 18. He further notes that, unlike *Estate of Luongo* where twelve years separated the three wills at issue, Decedent executed the Wills only one year apart. Vincent contends that his allegations demonstrated a "realistic possibility" that both Wills will be set aside, which was sufficient to show standing in the present will contest. *Id*. at 19-20 (*quoting Estate of Luongo*, 823 A.2d at 958).

Based on our review, we agree with Vincent that the Orphans' Court erred by holding that he lacked standing to challenge the 2019 Will. *See Nadzam*, 203 A.3d at 220. *Estate of Luongo* did not hold that a will contestant is barred from challenging a probated will based upon the mere existence of a prior will that disinherited the contestant. Rather, we

recognized in that case that, when properly presented, a contestant may raise the validity of a prior will to show that he would ultimately be able to invalidate each of the decedent's wills and take through intestate succession. **See Estate of Luongo**, 823 A.2d at 958; **see also In re Estate of Bacco**, 2020 WL 87475, at *3 (Pa. Super. 2020) (unpublished memorandum) (holding that will contestant lacked standing when he did "not assert — in any pleading — that [the d]ecedent's [prior] will [was] also invalid" and holding that "in a case involving the revival of a twice removed will, a challenger must assert that **each** prior will is invalid because, pursuant to the doctrine of relative revocation, the next proceeding will is automatically reinstated") (emphasis in original).[3]

Here, Vincent alleged in his petition that Decedent lacked testamentary capacity and Jenine exerted an undue influence on Decedent at the time he executed the Wills, causing him to name Appellees as his sole beneficiaries and disinherit Vincent in both instruments. Thus, Vincent alleged a "realistic possibility" that both Wills would be invalidated and he would receive an intestate share of Decedent's estate. **Estate of Luongo**, 823 A.2d at 958; **see also** 20 Pa.C.S.A. §§ 2101, 2103(1) (setting forth the right of a decedent's issue to share in the decedent's intestate estate) Moreover, unlike **Estate of Luongo**, Vincent has not conceded the validity of Decedent's prior

_____

[3] **See** Pa.R.A.P. 126(b)(1)-(2) (stating unpublished, non-precedential decisions of this Court filed after May 1, 2019, "may be cited for their persuasive value").

2018 Will, but rather he contests it under the same theories as pertaining to the probated 2019 Will.[4] Accordingly, we conclude that Vincent has made a threshold showing that he was "aggrieved" by the probate of the 2019 Will, such that he had standing to file an appeal therefrom. 20 Pa.C.S.A. § 908(a). We therefore reverse the Orphans' Court's ruling sustaining Appellees' second preliminary objection.

In his second issue, Vincent argues that the Orphans' Court erred in sustaining Appellees' third preliminary objection, in which they challenged Vincent's attempt to contest both Wills in the same petition. Vincent contends that the court "based [its ruling] on an excessively narrow and inaccurate interpretation of" **Estate of Luongo**. Vincent's Brief at 23. He asserts that

_____

[4] Jenine argues that, because Vincent failed to file a responsive pleading to her answer and new matter, he admitted the allegations in her new matter that "Decedent was not wholly dependent on Jenine" and "was a vibrant and active individual for his age." Jenine's Brief at 21. We disagree. Generally, when a party fails to file a response to a new matter, factual averments contained therein are deemed admitted. **See** Pa.O.C.R. 3.10(b) (stating, "Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication"); **see also McCormick v. Allegheny Gen. Hosp.**, 527 A.2d 1028, 1031-32 (Pa. Super. 1987). However, here Jenine effectively abandoned her answer and new matter when she filed a joinder to Vito and Neissa's preliminary objections. Moreover, the relevant allegations in Jenine's new matter are conclusions of law, as to which Vincent had no obligation to respond. **See Gotwalt v. Dellinger**, 577 A.2d 623, 626 (Pa. Super. 1990) (stating that "no denial is required [to conclusions of law in a new matter] because such averments are deemed to be denied . . . and no judgment may be entered based upon a party's failure to respond to those averments"); **see also** Answer & New Matter, 3/21/23, at ¶¶ 28-30 (alleging that: Decedent possessed testamentary capacity; neither Jenine nor any other family member exerted undue influence on Decedent; and "Decedent was in full command of his faculties and knew exactly what he wanted to do with his property").

- 11 -

rather than prohibiting the contest of multiple wills in one petition, *Estate of Luongo* required that "he allege facts which present a realistic possibility that the 2018 Will is also invalid to establish his standing to challenge the 2019 Will." *Id*. at 22. Even to the extent he could not challenge the 2018 Will in the instant proceeding, Vincent contends that the court should not have dismissed his petition in its entirety and instead have permitted his challenge to the 2019 Will to go forward.

The Orphans' Court explained its rationale for sustaining the objection to Vincent's challenge to multiple wills as follows:

> The only [w]ill presently before the [c]ourt is the 2019 Will, as it is the [w]ill that was admitted to probate. The facts surrounding whether there was undue influence and testamentary capacity at the time of the execution of each [w]ill are completely different, as they are based upon individual circumstances on different dates.

Opinion and Order, 6/20/24, at 3.

Upon review, we discern no error or abuse of discretion in the Orphans' Court's ruling. *See Nadzam*, 203 A.3d at 220. Section 908(a), which establishes the right to contest a will, provides that a party "seeking to challenge the probate of a will or who is otherwise aggrieved by a decree of the register" may appeal within one year of the decree. 20 Pa.C.S.A. § 908(a). This provision thus limits the cause of action to a will admitted to probate. *See id*.; *see also In re Estate of Whitley*, 50 A.3d 203, 208 (Pa. Super. 2012) (stating that "[o]nly an appeal from the decree of probate can properly bring the validity of the will within the jurisdiction of the Orphans' Court").

Here, only the 2019 Will was admitted to probate, and therefore Vincent could only challenge that instrument in his petition.

Our analysis in *Estate of Luongo* supports our reading of Section 908 as limiting Vincent's contest to the 2019 Will. While we addressed the appellant's allegations concerning the prior 1987 and 1983 wills in that case, we confined our standing analysis to the question of whether the appellant had "standing to contest probate of the decedent's most recent will," *i.e.* the 1995 will admitted to probate. *Estate of Luongo*, 823 A.2d at 955. We found that the Orphans' Court's review of allegations pertaining to the prior wills was "entirely legitimate" because "the court was not passing on the validity of those wills[,]" "which would have to be invalidated" in future proceedings "before [the a]ppellant could reach [the d]ecedent's estate through intestate succession." *Id*. at 958. Requiring separate contests to wills as they are individually admitted to probate is consistent with the procedure outlined in *Estate of Shelly*, 399 A.2d 98 (Pa. 1979), where heirs-at-law initially challenged the decedent's 1969 will and, after its invalidation, pursued a second challenge to an earlier 1965 will. *See id*. at 99.

Therefore, we affirm the Orphans' Court's decision to sustain the preliminary objection relating to Vincent's contest of multiple wills in the same petition. Contrary to Vincent's argument, the court's ruling with respect to this objection did not "put [him] out of court" entirely. Vincent's Brief at 24. Rather, the court merely struck Vincent's challenge to the 2018 Will, while permitting his challenge to the 2019 Will to go forward. *See* Opinion and

Order, 6/20/24, at 3 (stating that "[t]he only [w]ill presently before the [Orphans' C]ourt is the 2019 Will").[5] Accordingly, no relief is due on Vincent's second issue.

In his third issue, Vincent argues that the Orphans' Court erred by finding that he did not adequately plead a confidential relationship between Jenine and Decedent, which Appellees challenged in their fourth preliminary objection. To demonstrate undue influence, a will contestant must prove by clear and convincing evidence that "(1) when the will was executed the testator was of weakened intellect and (2) that a person in a confidential relationship with the testator (3) receives a substantial benefit under the will."
***In re Estate of Schumacher***, 133 A.3d 45, 52 (Pa. Super. 2016).

> For purposes of voiding a will on the ground of undue influence, a confidential relationship exists whenever circumstances make it certain that the parties did not deal on equal terms but that on the one side there was an overmastering influence, and on the other, dependence or trust, justifiably reposed. There is no precise formula for finding a confidential relationship, but generally it will be found when one justifiably reposes his trust in the hands of another who possesses some overmastering influence. This trust is given with confidence that it will be used in the testator's best interests.

---

[5] Appellees requested in their second preliminary objection that the Orphans' Court order Vincent "to file a [s]econd [a]mended [p]etition challenging only the 2019 Will." Preliminary Objections, 12/4/23, at ¶ 36. We conclude that further amendment of Vincent's petition is unnecessary as his allegations pertaining to the 2018 Will are essential for him to demonstrate standing to contest the 2019 Will. ***See supra***.

*In re Staico*, 143 A.3d 983, 991 (Pa. Super. 2016) (citation omitted). A "parent-child relationship with the [decedent] does not *per se* justify recognition of a confidential relationship. Rather, the existence of a confidential relationship between a parent and child must be established by the evidence." *In re Estate of Jakiella*, 510 A.2d 815, 818 (Pa. Super. 1986) (citation omitted).

Vincent argues that his amended petition contained ample factual averments concerning the relationship between Jenine and Decedent during the period when the Wills were executed. These allegations include that: (1) Jenine was Decedent's daughter; (2) he was "wholly dependent on Jenine;" (3) he was elderly and exhibited signs of dementia and mental incompetence; and (4) Jenine made false claims to Decedent about Vincent in order to convince Decedent to disinherit his son. First Amended Petition for Rule to Show Cause, 2/1/23, at ¶¶5, 10-12. Vincent contends that, accepting these allegations as true, they were sufficient to establish the existence of a confidential relationship between Jenine and Decedent.

In finding that Vincent did not allege sufficient facts to establish a confidential relationship, the Orphans' Court noted: "A single sentence stating that . . . Decedent was elderly and 'wholly dependent' on [Jenine] does not suffice, especially from a medical standpoint, to demonstrate that . . . Decedent and [Jenine] did not act on equal footing or that [Jenine] had an 'over-mastering influence' on . . . Decedent." Opinion and Order, 6/20/24, at 3.

After careful review, we conclude that the Orphans' Court erred in determining that Vincent did not adequately plead a confidential relationship. *See Nadzam*, 203 A.3d at 220. In its ruling, the Orphans' Court focused solely on the averments in the tenth paragraph of Vincent's amended petition, that Decedent was elderly and "wholly dependent" on Jenine. First Amended Petition for Rule to Show Cause, 2/1/23, at ¶ 10. However, the court ignored Vincent's additional allegations that Decedent exhibited signs of dementia and mental incompetence and Jenine made false claims to Decedent regarding Vincent in an effort to disinherit her brother. *See id*. at ¶¶ 11-12. Viewing these allegations in their totality and accepting them as true as we must do at this stage of the proceedings, we find that Vincent satisfactorily pleaded that Jenine occupied a position of "overmastering influence" over Decedent. *Staico*, 143 A.3d at 991 (citation omitted); *see also Nadzam*, 203 A.3d at 220.[6] Accordingly, we reverse the court's ruling sustaining Appellees' fourth preliminary objection

In his final issue, Vincent argues that the Orphans' Court erred by sustaining Appellees' fifth preliminary objection and finding that he did not adequately plead the substantial benefit element of his undue influence claim. Pennsylvania courts have not "precisely defined" the substantial benefit

_____

[6] In light of our reversal of the Orphans' Court's ruling with respect to this preliminary objection, we need not address Vincent's fourth issue, in which he argues that the court erred by not permitting him an opportunity to amend his petition to plead additional facts demonstrating the confidential relationship.

element, and a court's finding of whether one exists "must depend upon the circumstances of the particular case." *In re Estate of Smaling*, 80 A.3d 485, 497 (Pa. Super. 2013) (*en banc*) (citation omitted). A party's appointment as an executor does not generally suffice to establish a substantial interest. *See In re Estate of Stout*, 746 A.2d 645, 649 (Pa. Super. 2000). We have held that a "sizable increase" in the bequest to a party constitutes a substantial benefit. *In re Estate of Fritts*, 906 A.2d 601, 609 (Pa. Super. 2006).

Vincent asserts that he sufficiently alleged that Jenine received a substantial benefit because he challenges both Wills in his petition. He contends that if both Wills are set aside, "Decedent's estate will be distributed under the rules of intestacy, by virtue of which Jenine would receive a one-third . . . share as one of . . . Decedent's surviving children." Vincent's Brief at 31. Vincent maintains that Jenine's share under either of the Wills "more than meets the legal standard for substantial benefit." *Id*. He contends that the Orphans' Court's finding that he did not plead a substantial benefit "is premised on the same faulty reasoning" underlying the court's finding with respect to standing, "that the 2019 Will is insulated from challenge due to the mere existence of the 2018 Will." *Id*. at 32.

Based on our review, we agree with Vincent that the Orphans' Court erred. *See Nadzam*, 203 A.3d at 220. The Orphans' Court compared Jenine's share under the 2019 Will and the 2018 Will, finding no substantial benefit as she "receives exactly the same percentage of . . . Decedent's estate in both .

. . Wills."[7] Opinion and Order, 6/20/24, at 3. However, Vincent premised his claim on the theory that he will ultimately succeed in challenging both Wills and Decedent's estate will pass through the law of intestacy. Therefore, the proper question is whether Vincent alleged that Jenine received a significantly greater benefit under the 2019 Will than she would have received from the intestate estate.

We conclude that Vincent made the requisite showing, as Jenine would inherit 60% of Decedent's residual estate under the 2019 Will, while she would only inherit one-third of Decedent's estate under the rules of intestacy. *See* 20 Pa.C.S.A. § 2104(2) (providing that issue in the same degree of consanguinity to the decedent take from the intestate estate in equal shares). A near doubling of Jenine's intestacy share to her 60% share under the 2019 Will clearly constitutes a substantial benefit. *See Estate of Fritts*, 906 A.2d at 609 (holding that party's receipt of 61.5% of estate under challenged will was a substantial benefit compared to 40% under prior will); *see also Smaling*, 80 A.3d at 497 (finding party's inheritance of the entirety of the decedent's estate, or $200,000, was a substantial benefit compared to receipt of $25,000 under prior will). Accordingly, as Vincent satisfactorily pleaded

---

[7] It is unclear on the current record whether Jenine would receive the same percentage of Decedent's estate under both Wills, as she received 60% of the estate under the 2019 Will and the remainder of the estate, following bequests of land and cash to Vito and Neissa, under the 2018 Will. In any event, this issue is not material to our analysis as we focus on whether she would inherit more under the 2019 Will as compared to her intestate share.

Jenine's receipt of a substantial benefit, we reverse the Orphans' Court's ruling sustaining Appellees' fifth preliminary objection.

Finally, we address Vito and Neissa's argument that the Orphans' Court erred by not sustaining the first preliminary objection in which they asserted that the court lacks subject matter jurisdiction over this matter. As noted above, Vito and Neissa filed a motion to dismiss arguing that that they are necessary and indispensable parties to the will contest and the court lacked jurisdiction over this proceeding because Vincent did not join them within one year of the probate decree, as required by Section 908. **See** 20 Pa.C.S.A. § 908(a) (stating that a party aggrieved by a probate decree "may appeal therefrom to the court within one year of the decree"). Appellees raised this issue again in their preliminary objections.[8]

"It is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*. Our standard of review is *de novo*, and our scope of review is plenary." **In re Estate of Anderson**, 317 A.3d 997, 1004 (Pa. Super. 2024) (citation omitted).

> [I]n general, an indispensable party is one whose rights are so connected with the claims of the litigants that no decree can be made without impairing its rights . . . .

---

[8] Appellees also asserted in their motion to dismiss and preliminary objections that the Orphans' Court lacked subject matter jurisdiction to consider Vincent's will contest because he filed a petition for rule to show cause instead of a notice of appeal from the probate decree. Appellees do not challenge the court's ruling with respect to this portion of their jurisdictional objection on appeal.

The absence of an indispensable party goes absolutely to the court's jurisdiction. If an indispensable party is not joined, a court is without jurisdiction to decide the matter. The absence of an indispensable party renders any order or decree of the court null and void. The issue of the failure to join an indispensable party cannot be waived.

*Id*. at 1004-05 (citation omitted).

Our Supreme Court has held that "[w]here the heirs at law of a decedent are not voluntarily parties to [a will contest proceeding], or have not been brought in by citation[,] the [O]rphans' [C]ourt has no jurisdiction to settle finally the validity of the will against such of the heirs as are not parties to the proceedings." *In re Thomas' Estate*, 36 A.2d 819, 820 (Pa. 1944) (citation omitted). However, the Court found that the failure to name the heirs and next of kin as parties did not warrant reversal of the decree directing the admission of the will to probate. *See id*. Similarly, in *In re Cohen's Estate*, 51 A.2d 704 (Pa. 1947), the Court concluded that the "proper practice is to join all" heirs and next of kin impacted by a challenge to the validity of a will. *Id*. at 707. The Court stated that such an "error in practice, however, is not necessarily reversible error," and found that under the facts of that case that there was "no necessity to recommit in order to join all omitted" beneficiaries to the challenged will. *Id*.

This Court has held, in the context of a will contest brought in a declaratory judgment action, that a court may not construe the validity of the will "unless all parties who may be affected are before the trial court." *In re Mampe*, 932 A.2d 954, 958 (Pa. Super. 2007) (*citing In re Straus' Estate*,

- 20 -

161 A. 547 (Pa. 1932)). In that case, we found that all interested parties were parties to the action, including the named beneficiaries and a sibling who the decedent specifically disinherited in the will. *See id*.

Vito and Neissa assert that they are necessary and indispensable parties because they each stood to inherit 20% of Decedent's estate under the 2019 Will, which Vincent contests in this matter. They therefore contend that Vincent was required to petition the Orphans' Court for a citation directed to them and make diligent efforts to serve the citation within the one-year period prescribed by Section 908. Vito and Neissa assert that Vincent failed to undertake efforts to join them as parties as he "only made allegations against Jenine" in the petitions, "only asked for a citation directed to Jenine," and only served Jenine. Vito and Neissa's Brief at 8. Vito and Neissa assert that the absence of subject matter jurisdiction requires the dismissal of Vincent's amended petition with prejudice.

The Orphans' Court rejected the claim that it lacked subject matter jurisdiction on the grounds that Vincent, Trina, and her three children filed the initial petition for rule to show cause within one year of the probate decree and Vito and Neissa actively participated in the ligation within the one-year period. *See* Order, 10/30/23, at 1 (unnumbered); *see also* Opinion and Order, 6/20/24, at 2.

After careful review, we conclude that the failure to join Vito and Neissa within one year of the probate decree does not constitute reversible error, warranting the dismissal of Vincent's will contest. *See Cohen's Estate*, 51

A.2d at 707. A review of the initial petition for rule to show case, filed jointly by Vincent, Trina, and her children, reflects that the petitioners did not identify Jenine as the sole respondent in the action. Rather, the petitioners identified Jenine, Vito, and Neissa in three separate paragraphs and attached the certificate of notice of estate administration issued to Jenine, Trina, Vincent, Vito, and Neissa. *See* Petition for Rule to Show Cause, 11/22/22, at ¶¶ 5-7, Exhibit C. The petitioners also included a proposed citation that contained a blank space for the Orphans' Court to fill in the names of the respondents to the petition. However, the court crossed out the blank space in the citation and issued its citation directed to a singular "Respondent." Order, 11/30/22.

Therefore, it appears that Vincent intended to join Vito and Neissa as parties to the proceeding, and the failure to do so resulted from a breakdown in the operation of the Orphans' Court.[9] Moreover, Vito and Neissa entered an appearance and participated in the litigation prior to the expiration of the one-year statutory period for initiating a will contest. *See* Praecipe for Entry of Appearance, 6/28/23 (filed by Vito and Neissa's counsel). As all interested parties to the will contest were before the Orphans' Court within one year of the probate decree, Vito and Neissa's request that we affirm the dismissal of Vincent's petition on subject matter jurisdiction grounds merits no relief.

_____

[9] In fact, as noted above, the Orphans' Court later directed Vincent to file an amended citation naming Vito and Neissa as respondents, when it denied their motion to dismiss.

Accordingly, we affirm the Orphans' Court's order to the extent it overruled Appellees' first preliminary objection and sustained their third objection. We reverse the order to the extent it sustained the remaining objections and dismissed Vincent's first amended petition. We remand for further proceedings and direct Appellees to answer Vincent's first amended petition within thirty days of the return of the record to the Orphans' Court.

Order affirmed in part and reversed in part. Remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/14/2025